**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ROBERT O. CARR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0565-SG |
| | ) | |
| GLOBAL PAYMENTS INC. and | ) | |
| HEARTLAND PAYMENT SYSTEMS, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Date Submitted:  November 13, 2019
Date Decided:  December 11, 2019

A. Thompson Bayliss and Adam K. Schulman, of ABRAMS & BAYLISS LLP, Wilmington, Delaware; OF COUNSEL: Peter L. Welsh and Paul S. Kellogg, of ROPES & GRAY LLP, Boston, Massachusetts, *Attorneys for Plaintiff.*

T. Brad Davey and Andrew H. Sauder, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: David L. Feinberg and Fredric J. Bold, Jr. of BONDURANT MIXSON & ELMORE LLP, Atlanta, Georgia, *Attorneys for Defendants.*

GLASSCOCK, Vice Chancellor

This matter was before me on the Defendants' Motion to Modify an order requiring litigation costs incurred by the Plaintiff, Robert O. Carr, to be advanced by the Defendants. I granted that Motion by Memorandum Opinion of October 31, 2019. The Plaintiff moved for reargument, pointing to a fundamental misapprehension of fact on my part; I granted that motion and withdrew the Memorandum Opinion. The following is my resolution of the underlying Motion to Modify. For the reasons that follow, that Motion is granted.

## I. BACKGROUND[1]

*A. The Parties*

Plaintiff Robert O. Carr is the former CEO and Chairman of the Board of Directors of Heartland Payment Systems, Inc., now Heartland Payment Systems, LLC ("Heartland").[2]

Defendant Heartland is a Delaware limited liability company that operates as a nationwide provider of electronic payment processing services.[3]

---

[1] I base these facts on the record submitted under affidavit with the parties' papers.

[2] Transmittal Aff. of A. Thompson Bayliss to Pl. Robert O. Carr's Opp'n to Defs.' Mot. to Modify the Advancement Order, Docket Item ("D.I.") 41 ("Thompson Aff."), Ex. E, First Am. Compl. ("FAC"), ¶¶ 1, 62 n.5. Carr founded Heartland Payment Systems, Inc., and that corporation was merged into Heartland Payment Systems, LLC as a part of the merger with Global Payments Inc. *Id.* ¶ 62 n.5. After the merger, Heartland Payment Systems, Inc. no longer existed as a corporate entity. *Id.* Thus, references to Heartland prior to the merger refer to Heartland Payment Systems, Inc., and references to Heartland after the merger refer to Heartland Payment Systems, LLC.

[3] *Id.* ¶¶ 62, 65.

1

Defendant Global Payments Inc. ("Global") is a Georgia corporation and Heartland's sole member.[4]

*B. The Merger Agreement*

Carr served as Heartland's Chairman and CEO starting in 2000.[5] In December 2015, Heartland, along with Global, Data Merger Sub One, Inc., and Data Merger Sub Two, LLC, signed an Agreement and Plan of Merger (the "Merger Agreement").[6] Under the Merger Agreement, Heartland became a limited liability company and a wholly owned subsidiary of Global.[7]

Section 5.9(b) of the Merger Agreement provides that after the merger, Global will cause Heartland to the fullest extent permitted by law to indemnify and advance expenses to Carr for litigation that "arises out of or pertains to the fact that" Carr was an officer and director of Heartland prior to the merger:

> [D]uring the period commencing as of the Effective Time and ending on the sixth (6th) anniversary of the Effective Time, **Parent shall cause the Surviving Company to the fullest extent permitted under applicable Law**, **(i) indemnify and hold harmless each Indemnitee against and from any costs or expenses** (including attorneys' fees), judgments, fines, losses, claims, damages, liabilities and amounts paid in settlement actually and reasonably incurred by such Indemnitee **in connection with any Litigation**, whether civil, criminal,

---

[4] *Id.* ¶ 63.

[5] *Id.* ¶ 90.

[6] Thompson Aff., Ex. A, Agreement and Plan of Merger Among Heartland Payment Systems, Inc., Global Payments Inc., Data Merger Sub One, Inc. and Data Merger Sub Two, LLC Dated as of December 15, 2015 ("Merger Agreement").

[7] *See* Merger Agreement § 2.1.

administrative or investigative, **to the extent such Litigation arises out of or pertains to the fact that an Indemnitee is or was an officer or director of the Company** or any of its subsidiaries, or an officer, director or trustee of any other Person at the request of the Company or any of its Subsidiaries, **prior to the Effective Time**, in each case, whether asserted or claimed prior to, at or after the Effective Time; **and (ii) pay in advance of the final disposition of any such Litigation the expenses** (including reasonable attorneys' fees) of any Indemnitee upon receipt of an undertaking by or on behalf of such Indemnitee to repay such amount if it shall ultimately be determined that such indemnitee is not entitled to be indemnified.[8]

*C. Heartland Sues and Carr Seeks Advancement*

After the merger's public announcement, the government initiated investigations concerning the trading of Heartland's stock leading up to the announcement.[9] Allegedly, Carr provided cash along with inside information regarding the merger to his long-time girlfriend so that she could purchase stock and capitalize on the bump in value after the merger's public announcement.[10] These investigations culminated in a lawsuit by the SEC against Carr for insider trading.[11]

In response to the government investigations, Heartland filed suit in the United States District Court for the District of New Jersey (the "New Jersey

---

[8] Merger Agreement § 5.9(b) (emphasis added). The Merger Agreement defines Global as "Parent" and Heartland as the "Surviving Company." *See id.* Preamble and Recitals. The parties agree that Carr is an Indemnitee as defined in § 5.9(a) ("any individual who, on or prior to the Effective Time, was an officer or director of the Company. . .").

[9] FAC, ¶¶ 45–46, 51, 164–65.

[10] *Id.* ¶¶ 7–42.

[11] *Id.* ¶ 186.

Action").[12]  This initial complaint (the "Initial Complaint") asserted claims for breach of fiduciary duty and breach of contract against Carr.[13]  The breach-of-fiduciary-duty claims concerned the alleged insider trading described above.[14]  The breach-of-contract claim alleged that Carr breached the non-compete and non-solicitation clauses of his employment agreement.[15]  Specifically, the breach-of-contract claim alleged that Carr founded a new company, Beyond, during his non-compete period that offered competing products and services.[16]  Using his new company, he allegedly competed and solicited Heartland employees, in the process using purloined confidential information.[17]

Regarding confidential information, the Initial Complaint alleged that:

- Heartland entered the employment agreement with Carr to, among other reasons, "preserve and protect its confidential information,"[18] that the purpose of the agreement was "intended to, among other things, preclude Carr from disclosing or misappropriating [Heartland's] confidential

---

[12] Thompson Aff., Ex. B, Compl. ("Compl.").

[13] *Id.* ¶¶ 89–123, 150–89.  The Initial Complaint also contains counts of aiding and abetting the breach of fiduciary duty against Carr's girlfriend, Kathie Hanratty.  *Id.* ¶¶ 124–49.

[14] *Id.* ¶¶ 89–123.

[15] *Id.* ¶¶ 150–89.

[16] *Id.* ¶¶ 178–81.

[17] *See id.* ¶¶ 150–86.

[18] *Id.* ¶ 152.

information for his own benefit or for the benefit of any other person or entity,"[19] and that the employment agreement "prohibits Carr from using or disclosing [Heartland's] confidential information;[20]

- Carr's employment agreement required him to acknowledge that the restrictions were necessary to protect the company's confidential information;[21]

- Carr breached the confidentiality restrictions outlined in his employment agreement through his insider trading;[22]

- Carr's misuse of confidential information intertwined with his unlawful competition and solicitation because he sought after and used confidential compensation plans, commission plans, and contract terms;[23] and

- "Carr's . . . breaches of the confidentiality . . . covenants, have caused, and continue [to] cause, [Heartland] harm."[24]

---

[19] *Id.* ¶ 154.

[20] *Id.* ¶ 155.

[21] *Id.* ¶ 162.

[22] *Id.* ¶¶ 166–76.

[23] *Id.* ¶¶ 181–82. Specifically, the Initial Complaint alleged that Carr created "compensation plans relating to founder's stock and a commission plan that copies [Heartland's] '94' commission plan," and that "while developing Beyond's products and services, Carr requested, sought after, received, and/or used [Heartland's] confidential information, including confidential information regarding contract terms. . ." *Id.*

[24] *Id.* ¶ 185.

Carr requested advancement for his litigation expenses in the New Jersey Action, and the Defendants refused.[25] In response, on July 30, 2018, Carr sued to compel advancement from the Defendants under § 5.9(b) of the Merger Agreement.[26] In a December 3, 2018 bench ruling, I found that Carr was entitled to advancement for both the breach-of-duty and the breach-of-contract claims brought in the New Jersey Action, and I issued an advancement order on December 7, 2018.[27] The New Jersey Action, meanwhile, was stayed while a criminal investigation in the District of Connecticut over Carr's insider trading proceeded.[28] After my Order issued, this advancement action closed.

*D. Heartland Amends its Complaint and Seeks to Modify the Advancement Order*

The stay in the New Jersey Action lifted on May 30, 2019, and a few days later the Defendants filed their First Amended Complaint in that lawsuit (the "FAC").[29] In addition to the existing claims against Carr for breach of fiduciary

---

[25] *See* Verified Compl. for Advancement, D.I. 1. ("Advancement Compl."), ¶¶ 40–50.

[26] *Id.* ¶¶ 66–71 ("Count I: Advancement Pursuant to Section 5.9(b) of the Merger Agreement").

[27] The Parties' Stipulation and Order Governing Advancement Related to USAO Investigation, SEC Trading Investigation, Heartland Action and Fees-on-Fees, D.I. 35 ("Advancement Order").

[28] Declaration of Steven Rosenwasser in Support of Defs. Mot. to Modify the Advancement Order, D.I. 37 ("Rosenwasser Aff."), Ex. C, Def. Robert O. Carr's Mem. of Law in Support of Mot. for a Partial Extension of the Stay of Proc., at 5.

[29] *See* Rosenwasser Aff., ¶ 4; FAC.

duty and breach of contract, the Defendants added claims for "Breach of the Duties of Loyalty, Trust, and Good Faith," "Equitable Fraud," and "Fraud."[30]

Most importantly for this matter, the Defendants amended their breach-of-contract claim. As described above, the initial breach-of-contract claim alleged that Carr misused confidential information, engaged in unlawful competition, and participated in unlawful solicitation.[31] By contrast, the FAC's breach-of-contract claim removes allegations of the misuse of confidential information and alleges only a breach of the non-compete and non-solicitation aspects of Carr's employment agreement; breaches occurring, per the Defendants here, only *after* the end of Carr's employment at Heartland.[32] The FAC eliminates allegations that Carr sought after or used confidential information, copied specific compensation and commission plans, or sought after or had access to confidential contract terms.[33] In other words, the FAC distances itself from allegations of misuse of confidential information and focuses solely on Carr's post-employment competition and solicitation activity.[34]

---

[30] FAC, ¶¶ 150–224.

[31] Compl., ¶¶ 150–89.

[32] *See* FAC, ¶¶ 225–53. The allegations in the FAC revolve around the fact that Carr set up a competing business "within a few weeks" of leaving Heartland, that he recruited others away from Heartland "as soon as [he] left," and that he developed competing products and services "within twelve (12) months of leaving" Heartland. *Id.* ¶¶ 242–44.

[33] *See id.*

[34] *See id.* As amended, the claim only mentions confidential information twice. The first is in the title of Carr's employment agreement: "Amended and Restated Employee Confidential Information and Noncompetition Agreement." *Id.* ¶¶ 227–28. In addition, the amended claim quotes from the employment agreement, affirming that "the Company has expended considerable

7

The FAC specifically eschews any allegation that Carr acquired confidential information during his service with which he breached his employment contract.

On June 3, 2019, after amending their claims in the New Jersey Action, the Defendants moved to modify my prior advancement order (the "Motion to Modify"), and this case reopened.[35] The Motion to Modify relates *only* to the breach-of-contract claim (and not the breach of fiduciary duty, breaches of loyalty, trust and good faith, equitable fraud, or fraud claims) within that suit.[36] The Defendants' amendments in the New Jersey Action suggest they intend the breach-of-contract claim to arise solely from Carr's conduct after he was no longer an officer and director of Heartland.[37] In the FAC, the Defendants state they will not rely on allegations of the misuse of confidential information.[38] Accordingly, they ask that I

---

resources to develop the confidential information and the relationships that the Company enjoys," and that "the restrictions . . . are necessary to prevent even the inadvertent disclosure of this confidential information. . ." *Id.* ¶ 236.

[35] Defs.' Mot. to Modify the Advancement Order, D.I. 37 ("Motion to Modify").

[36] *See* Motion to Modify, at 13–14 ("Defendants request that this Court modify the Order to [sic] so that Defendants need not provide advancement for the Amended Non-Compete Claim moving forward.").

[37] *See* FAC, ¶¶ 242–44 ("[W]ithin a few weeks of leaving [Heartland], Carr began actively engaging in activities to form and develop Beyond," and "Carr violated the Non-Competition provision of his Agreement by [competing] . . . within twelve (12) months of leaving [Heartland].").

[38] *Id.* ¶ 253 n.11 ("To be clear, for purposes of this litigation, [Heartland] is not claiming that Carr improperly used or disclosed [Heartland's] confidential information in connection with its claim that Carr breached his non-compete and non-solicitation covenants. That is, [Heartland] does not base, and will not base, its claim that Carr breached his non-compete and non-solicitation covenants on Carr's use or misuse of [Heartland's] confidential information.").

revisit my finding that Carr is entitled to advancement for the breach-of-contract claim.

I heard oral argument on July 25, 2019 in Georgetown and considered the matter submitted on that date. I issued a Memorandum Opinion on October 31, 2019 but withdrew that Opinion upon Plaintiff's Motion for Reargument. This decision follows.

## II. ANALYSIS

Delaware law recognizes the potential for parties to eliminate their advancement obligations by amending their claims.[39] If the amendments successfully "moot [the] advancement dispute by removing any []claims that would trigger an advancement right," modification of a prior advancement order is proper.[40] Such a motion, I confess, engages my skepticism nonetheless. This Court, having found—over the Defendants' protests—a right to advancement, ought be wary of artful attempts at pleading around such a right. The "mere relabeling" of claims will not support modification when the underlying litigation remains substantially the same.[41] Finally, I consider the Motion to Modify in recognition that equity requires that ambiguities in advancement cases generally be resolved in

---

[39] *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *6 (Del. Ch. May 28, 2015) (citing *Xu Hong Bin v. Heckmann Corp.*, 2010 WL 187018, at *2 (Del. Ch. Jan. 8, 2010)).

[40] *Id.*

[41] *Brown v. LiveOps, Inc.*, 903 A.2d 324, 325 (Del. Ch. 2006).

9

favor of enforcing the advancement right, with the ultimate resolution of those issues to be resolved at the indemnification stage of the proceedings.[42]

Upon consideration, in light of the facts and instructive case law, I find that the Defendants' motion here must be granted.

*A. Advancement Rights as Defined by the Merger Agreement*

Section 145 of the Delaware General Corporation Law ("DGCL") allows corporations to commit to advancement rights for directors and officers for indemnifiable expenses, either in foundational corporate documents or by contract.[43] Section 145 permits indemnification for litigation that arises "by reason of the fact that" a party is or was an officer or director.[44] As Carr points out, however, his rights arise out of the Merger Agreement via which Heartland became an LLC. LLC's are, largely, creatures of contract, permitted to construct relationships and impose duties free of many of the strictures that bind corporations and their fiduciaries under the DGCL. Therefore, despite the fact that it is Carr's service as a corporate fiduciary

---

[42] *E.g. Blankenship v. Alpha Appalachia Holding, Inc.,* 2015 WL 3408255, at \*18 (Del. Ch. May 28, 2015).

[43] 8 *Del. C.* § 145(f) ("The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any . . . agreement").

[44] 8 *Del. C.* § 145(a)–(b) ("A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding . . . by reason of the fact that the person is or was a director, officer, employee or agent of the corporation. . . .").

10

which is the basis of the extension of advancement rights, the contract itself implicates the LLC, which was free to contract for advancement rights in way of indemnification, regardless of the strictures of Section 145.

Here, the parties agree that § 5.9 of the Merger Agreement provides the standard that governs Carr's advancement rights. Section 5.9 of the Merger Agreement promises indemnification and advancement for litigation that "arises out of or pertains to the fact that" Carr was an officer or director of Heartland.[45] The parties appear in agreement, and I find, that "pertains to" is at least as broad in scope as "arises out of," and thus provides the outer limit of advancement rights in this context. In other words, rather than importing the statutory "by reason of the fact" standard, the drafters of the Merger Agreement chose to extend these rights in way of litigation that "pertains to" Carr's status as an officer or director. The first step in deciding this matter, then, is to determine what scope of advancement the parties meant to convey by use of the phrase "pertains to."

---

[45] Merger Agreement, § 5.9(b). As noted, the section provides, in pertinent part:

> Parent shall cause the Surviving Company to the fullest extent permitted under applicable Law, (i) indemnify and hold harmless each Indemnitee against and from any costs or expenses . . . in connection with any Litigation . . . to the extent such Litigation arises out of or pertains to the fact that an Indemnitee is or was an officer or director of the Company . . . prior to the Effective Time, in each case, whether asserted or claimed prior to, at or after the Effective Time; and (ii) pay in advance of the final disposition of any such Litigation the expenses (including reasonable attorneys' fees) of any Indemnitee upon receipt of an undertaking by or on behalf of such Indemnitee to repay such amount if it shall ultimately be determined that such indemnitee is not entitled to be indemnified.

11

The Defendants argue that because their claim (as amended) is strictly for breach of Carr's non-compete and non-solicitation obligations *after* his employment ended, the claim is a personal dispute between an employer and employee and does not "pertain to" Carr's former role as Chairman and CEO of Heartland before the merger date. The Defendants point to case law applying the "by reason of the fact" standard in Section 145, and urge me to apply that standard here. Carr, in turn, argues the language in § 5.9 of the Merger Agreement creates a standard broader in scope than "by reason of the fact," and that it includes the breach-of-contract claim, even as amended.

I assume that the parties chose the verb "pertain" for a reason, and that the failure to employ the familiar statutory standard was purposeful. "When the contract is clear and unambiguous," this Court will "give effect to the plain-meaning of the contract's terms and provisions."[46] Since the term "pertain" is undefined in the contract, I turn to Merriam Webster's Third New International Dictionary as a standard reference.[47] Per that source, to pertain to is to belong to; as a part, attribute,

---

[46] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010) (citing *Rhone–Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[47] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract." (citing *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 44 (Del. 1996))).

care, concern or duty.[48]  In other words, the Defendants are bound to provide advancement for claims that relate to some attribute or duty of Carr's service as a director or CEO.[49]  This language is broad, but not unbounded.

> *B. The Breach-of-Contract Claim is not Related to an Attribute or Duty of Carr's Position as an Officer or Director with Heartland*

Under the Merger Agreement, the Defendants are liable for advancement of Carr's expenses, including attorney's fees, for legal actions involving an attribute or duty of his service as a corporate officer or director.  Conversely, legal actions lacking this nexus are not within the contractual obligation.  Applying this standard, the alleged fraud and breaches of fiduciary duty by Carr warrant advancement because they involve his actions as Heartland's CEO; the Defendants do not contend otherwise.  The Defendants point to our case law—involving the different standard ("by reason of the fact") of Section 145 of the DGCL—that provides that "[c]laims brought by a corporation against an [individual] for . . . breaches of a non-competition agreement are quintessential examples of a dispute between an

---

[48] *Pertain*, *Webster's 3d Third New International Dictionary* (1961) ("[P]ertain . . .1(a)(1): to belong to something as a part or member or accessory or product . . . (2): to belong to something as an attribute or adjunct . . . (3) to belong to something as a care or concern or duty . . . .").

[49] In my withdrawn Memorandum Opinion, I assumed, erroneously, that Carr's indemnity rights were bounded by the DGCL, and noted that the parties agreed that "pertain" was synonymous with "related to," a term defined in our case law, in part, in connection with DGCL Section 145. *See Charney v. Am. Apparel, Inc.*, 2015 WL 5313769 (Del. Ch. Sept. 11, 2015).  This case law, I belatedly find, is not pertinent here.

employer" and an employee, and thus not indemnifiable.[50]  They argue that unless

the contract claim here arises by reason of the fact of Carr's service as an officer or

director, he is not entitled to indemnification or advancement under the Merger

Agreement.

I find the cases involving the Section 145 standard, although not controlling,

to be informative here.  These litigants, with great diligence, have cited the pertinent

case law concerning whether allegations of post-employment prohibited competition

enabled by company information purloined while acting as an officer or director

trigger advancement under Section 145.  That case law is not a model of consistency.

Vice Chancellor Zurn, in a scholarly opinion, recently considered the same case law,

in *Ephrat v. medCPU*,[51] and I need not repeat that exercise here.  The Vice

---

[50] *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281, at *7 (Del. Ch. June 26, 2019) (quoting *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *3 (Del. Ch. Jan. 30, 2004)).  The Court in *Weaver* elaborated:

> When a corporate officer signs an employment contract committing to fill an office, he is acting in a personal capacity in an adversarial, arms-length transaction.  To the extent that he binds himself to certain obligations under that contract, he owes a personal obligation to the corporation.  When the corporation brings a claim and proves its entitlement to relief because the officer has breached his individual obligations, it is problematic to conclude that the suit has been rendered an 'official capacity' suit subject to indemnification under § 145 and implementing bylaws.  Such a conclusion would render the officer's duty to perform his side of the contract in many respects illusory.

*Weaver*, 2004 WL 243163, at *3 (quoting *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *6 (Del. Ch. May 3, 2002)).

[51] 2019 WL 2613281 (Del. Ch. June 26, 2019).

Chancellor sided with the weight of authority under the *Brown v. LiveOps*[52] line of cases, finding such allegations of breach enabled by purloined confidential information require advancement.[53] The *medCPU* Court concluded that "allegations relating to post-separation use of confidential information learned pre-separation are 'by reason of the fact' of [plaintiffs'] positions."[54]

I find the reasoning in *medCPU* also applicable to the question before me, which involves the broader standard of "pertaining to" Carr's corporate service. Under this reasoning, claims arising post termination fall into two categories. If the claim as pled relies on the misuse of confidential information learned while an officer or director, it "pertains to" the party's former position, and that party is entitled to advancement under the standard applicable here.[55] On the other hand, if the claim merely alleges post-employment breach of a non-compete agreement, and it does not allege that the party used confidential information previously learned to facilitate the breach, then the breach does not "pertain to"—that is relate to a duty or attribute of—the party's position.[56]

---

[52] 903 A.2d 324 (Del. Ch. 2006).

[53] *MedCPU*, 2019 WL 2613281, at *7 ("I follow the weight of authority under *LiveOps*, *Pontone*, and *Thompson* . . .").

[54] *Id.*

[55] *See id.*

[56] *See id.*

15

In *medCPU*, the Court found that claims regarding the failure to return confidential documents and property, misappropriation of trade secrets, and possessing and using confidential and proprietary information all warranted advancement even though the actions arose post-termination.[57] By contrast, claims for breach of employment agreements based on the plaintiffs' competition with the company and solicitation of its employees did not warrant advancement because these claims did not allege that the plaintiffs misused any confidential information in carrying out the breaches.[58] This same dichotomy is pertinent here, and is, I note, consistent with my original bench decision and Order in this matter. In other words, even under the broad standard for advancement chosen by the parties, the activity complained of must relate to some attribute of the indemnified position. If the action complained of would be contractually prohibited regardless of the capacity of the employee as an officer or director, and if the claim does not arise from some activity related to that position, the claim is not one "pertaining to" the corporate service.

The Initial Complaint here stated that Heartland entered the employment agreement with Carr to, among other reasons, "preserve and protect its confidential information."[59] It further stated that the purpose of the agreement was "intended to,

---

[57] *Id.* at *8.

[58] *Id.*

[59] Compl., ¶ 152.

16

among other things, preclude Carr from disclosing or misappropriating [Heartland's] confidential information."[60] The Initial Complaint alleged that Carr's employment agreement required him to acknowledge that the restrictions were necessary to protect the company's confidential information to which Carr was exposed by reason of his service.[61] The Initial Complaint then intertwined the misuse of confidential information with the allegations of unlawful competition and solicitation.[62]

In short, as I found in my December 3, 2018 bench decision in this matter, embodied in my December 7 Order, the Initial Complaint in the New Jersey Action alleged that Carr misused confidential information, and the provisions excerpted from the employment agreement made clear that this was confidential information learned while Carr was on the job. This misuse of confidential information was intertwined with the entirety of the contractual allegations against Carr. Under the rationale of *medCPU*, these allegations "relat[e] to post-separation use of confidential information learned pre-separation" in the course of Carr's corporate capacity, warranting advancement under the Merger Agreement.

The Defendants' FAC effectively erases all mention of confidentiality from the breach of contract claim. The FAC eliminates any mention that Carr ever sought

---

[60] *Id.* ¶ 154.

[61] *Id.* ¶ 162.

[62] *Id.* ¶¶ 181–82.

or used confidential information, that he copied any compensation plans, that he sought after or had access to any confidential contract terms, or even that he acknowledged in his contract the importance of confidentiality.[63]   The FAC explicitly eschews allegations of a breach of the confidentiality portion of Carr's contract, and focuses solely on his post-employment competition and solicitation activity.  As it stands, the FAC falls into the second category under *medCPU* and, if so pled *ab initio*, would not warrant advancement because as alleged, Carr did not breach a contract through employment of an attribute of his position as officer or director.  Accordingly, the allegations do not "pertain to" his position.

*C. Amending a Claim May Moot Advancement Rights if it Substantively Changes the Underlying Litigation*

As described above, the Initial Complaint and the FAC imply different results under the Merger Agreement.  I find it necessary, in light of the amendment, to consider whether the Defendants have truly abandoned the claims triggering advancement, or instead have simply attempted artfully to pursue the same claims in cosmetically-redacted form.  It is significant to my decision that, in addition to their amendment, the Defendants represented to me at argument that they *will not* base their breach of contract claim on any misuse of confidential information.[64]

---

[63] *See* FAC, ¶¶ 225–51.

[64] *See also* FAC, ¶ 253 n.11 ("[Heartland] does not base, and will not base, its claim that Carr breached his non-compete and non-solicitation covenants on Carr's use or misuse of [Heartland's] confidential information.").

18

This, I find, diminishes the weight of Carr's argument that the Defendants will seek information through discovery that can then form the basis for a later-asserted claim for breach of the confidentiality aspects of his employment agreement.

Although advancement cases are typically decided on the allegations in the applicable pleadings, where modification of an order is sought post-amendment the original complaint does not simply disappear. The court "looks to substance as well as form, and it would be inequitable to allow [a party] to evade advancement" if the amendments are mere cosmetic modifications that leave the underlying claim essentially unaltered.[65] An examination of Delaware cases reveals that the path leading to elimination of advancement via pleading amendment is straitened. For instance, in *Mooney v. Echo Therapeutics, Inc,*[66] the court found that the amendments did not successfully eliminate advancement.[67] Although the amendments were tailored to eliminate advanceable claims, the Court examined the underlying causes of action and determined that the litigation would still involve the plaintiff's official capacity.[68]

---

[65] *Brown v. LiveOps, Inc.*, 903 A.2d 324, 329 (Del. Ch. 2006).

[66] 2015 WL 3413272 (Del. Ch. May 28, 2015).

[67] *Id.* at *11.

[68] *See id.* at *9–10.

19

By contrast, in *Duthie v. CorSolutions Medical, Inc*,[69] the plaintiff brought a defamation lawsuit to defend himself against the defendants' fraud claims.[70] The latter claims were ultimately barred by principles of issue preclusion, and the defendants represented to the Court that for business reasons they would not bring any further fraud claims in any forum.[71] This Court, in light of these circumstances, found the plaintiff no longer faced a threat of litigation, and therefore his maintenance of his defamation action no longer warranted advancement.[72]

Similarly, in *Xu Hong Bin v. Heckman Corp.*,[73] this Court revisited a holding finding claims required advancement, where the defendant clarified that it would not bring fiduciary claims related to pre-merger conduct against a plaintiff because it did not believe it had the standing to do so.[74] As Vice Chancellor Parsons observed in *Mooney* regarding *Xu Hong Bin*, because "the corporation declined to assert pre-merger claims and instead challenged only post-merger conduct . . . there was a bright-line, temporal standard and by not asserting any claims relating to conduct before a set date, the corporation was able to defeat a claim for advancement."[75]

---

[69] 2009 WL 1743650 (Del. Ch. June 16, 2009).

[70] *Id.* at *2–3.

[71] *Id.*

[72] *Id.*

[73] 2010 WL 187018 (Del. Ch. Jan. 8, 2010).

[74] *Id. at* *2 n.12.

[75] *Mooney v. Echo Therapeutics, Inc.*, 2015 WL 3413272, at *7 (Del. Ch. May 28, 2015).

Finally, in *LiveOps*, the defendants attempted to amend their complaint by eliminating language that tied the allegations to the plaintiff's time as an officer or director.[76] The Court rejected this attempt, stating that the defendants could not "evade advancement by simply crossing out . . . phrases" when the substantive allegations remained unaltered.[77]

The principle underlying this line of cases is that amendment can eliminate advancement obligations, but only if the amendment and the amending party's representations alter the claim in a manner that assures the Court the plaintiff will not face litigation that triggers advancement obligations.[78] Having first found that a claim requires advancement, the Court must be vigilant in review for artful pleading, and ensure that cosmetic changes to pleadings do not defeat vested contract rights.

Even under the gaze of such a jaundiced eye, I find the Defendants' amendment effectively moots Carr's claim for advancement because it substantially changes the nature of the claim. The Initial Complaint provides a useful backdrop that shows the Defendants originally stated a claim against Carr for the misuse of confidential information in violation of his employment agreement. They have

---

[76] *See Brown v. LiveOps, Inc.*, 903 A.2d 324, 329 (Del. Ch. 2006).

[77] *Id.*

[78] The cases cited for this principle—*Mooney*, *Duthie*, *Xu Hong Bin*, and *LiveOps*—involve corporations and apply Section 145. But this principle applies equally to advancement rights arising out of an LLC contract: the amendment must assure the Court the plaintiff will not face litigation triggering advancement obligations, however broadly those obligations are defined.

21

chosen to eschew that claim. Further, they have represented to the Court that they will not rely on allegations of the misuse of confidential information in bringing their non-compete and non-solicitation arguments in the New Jersey Action, a representation on which I rely here. This substantively alters the landscape of the litigation because it removes the breach-of-confidentiality cause of action. Importantly, I find this situation distinguished from the amendments in *LiveOps*. In *LiveOps*, the amendments were largely cosmetic, doing little more than removing language that would tie the claims temporally to the plaintiff's employment.[79] Here, the Defendants have removed the entire confidentiality cause of action and any indication of reliance upon it, and have agreed to forgo pursuit of such a claim now or later, in a manner that raises a judicial estoppel against such an action in the future.

This situation is also distinguishable from the amendments in *Mooney*, where discovery in the underlying case showed the litigation would still center on the plaintiff's official corporate capacity.[80] Although Carr points to two discovery requests by the Defendants that, viewed broadly, could potentially be inquisitive of Carr's misuse of confidential information, I do not find these requests indicate that the underlying litigation will meaningfully involve the misuse of confidential information in light of the new pleadings and representations of counsel.

---

[79] *Id.*

[80] *See Mooney*, 2015 WL 3413272, at *9–10.

22

Finally, Carr points to allegations in the FAC, averring at paragraphs 249–50 that:

> Carr's breaches of the non-competition and non-solicitation provisions in his [employment agreement with the Defendants] have caused, and continue to cause [Heartland] harm. . . . Among other harm, [Heartland] paid Carr's salary, bonuses and other compensation to which he was not entitled and paid payroll taxes it would have otherwise not been required to pay. Indeed, [Heartland] did not get the benefit of its bargain.[81]

Carr argues that the FAC thus attempts to force disgorgement of his salary as CEO, and, accordingly, indisputably pertains to his service as CEO. I read the cited language, however, as aimed at showing that harm is present to support the request for injunctive relief, in part because there was consideration paid for the restrictive covenants, for which the Defendants did not receive the benefit of their bargain during the restricted period *post-employment.* In fact, at paragraphs 242–48, the FAC provides that Carr began to violate his non-compete and non-solicitation agreements within a few weeks *after* he left Heartland employment. Again, the FAC specifically eschews reliance on allegations that Carr misused information to which he had access by virtue of his service as CEO or Chairman.

In sum, I find that the Defendants' amendment of their complaint in the New Jersey Action substantially alters the breach-of-contract claim brought against Carr. The claim now pled arises solely from post-employment conduct. The FAC does

---

[81] FAC, ¶¶ 249–50.

23

not allege any post-termination misuse of confidential information by Carr that he learned while Chairman and CEO. Further, the FAC's allegations of unlawful competition and solicitation do not rely on the misuse of confidential information. The FAC is limited to allegations that, after leaving Heartland's employ, within the restricted period called for in his employment agreement, Carr set up a competing company and breached that agreement. Because these allegations do not involve an attribute of Carr's position as an officer and director, I find that they do not pertain to such service, and do not therefore trigger the Defendants' advancement obligations.

### III. CONCLUSION

Based on the foregoing, the Defendants' Motion to Modify the Advancement Order is granted. Carr has also requested attorneys' fees relating to this action. A plaintiff is only entitled to "fees on fees" to the extent of his success in seeking advancement.[82] Because I find that the breach-of-contract claim does not warrant advancement, Carr is not entitled to fees in this matter.

The parties should confer on a form of order to implement my decision here, employing the framework described in *Danenberg v. Fitracks, Inc.*[83] to govern proceedings going forward.

---

[82] *See Lieberman v. Electrolytic Ozone, Inc.*, 2015 WL 5135460, at *7 (Del. Ch. Aug. 31, 2015).
[83] 58 A.3d 991, 1003–04 (Del. Ch. 2012).